```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
_____
                                   :
MATTHEW WEIGMAN,                   :
                                   :
        Plaintiff,                 :    Civ. No. 15-8454 (NLH)(KMW)
                                   :
    v.                             :    OPINION
                                   :
DEREK HAMEL, et al.,               :
                                   :
        Defendants.                :
_____:
```

APPEARANCES:

Betsy G. Ramos
Capehart & Scatchard
8000 Midlantic Drive
Mount Laurel, NJ 08054
    Counsel for Plaintiff

Daniel J. Gibbons, Esq.
Office of the U.S. Attorney
970 Broad Street
Newark, NJ 07102
    Counsel for Defendants

HILLMAN, District Judge

This case concerns alleged retaliation suffered by Plaintiff Matthew Weigman, an inmate who is presently incarcerated at the Federal Correctional Institution at Fort Dix, in Fort Dix, New Jersey. In the Amended Complaint, Plaintiff alleges that certain prison employees at FCI Fort Dix retaliated against him in violation of the First Amendment because Plaintiff filed inmate grievances regarding stolen property. ECF No. 43. Plaintiff seeks to bring his claim pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau

1

of Narcotics, 403 U.S. 388 (1971).  At issue is Defendants' Motion to Dismiss, which is ripe for adjudication.  ECF No. 44.  The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this case concerns a federal question.  For the reasons that follow, the Court will grant the Motion.

I. Factual Background

Plaintiff, at all times relevant to the Amended Complaint, was an inmate incarcerated at FCI Fort Dix.  ECF No. 43, Am. Compl., ¶ 3.  While he was there, at some point in December 2014, an MP3 charging station shared by the inmates in Plaintiff's housing unit was "removed without authorization," i.e. stolen.  Id., ¶ 53.  It was not replaced.  Id., ¶¶ 57-58.  The stolen MP3 charger caused conflict among the inmates in Plaintiff's housing unit, and Plaintiff, along with another inmate, filed inmate grievances over the issue.  Id., ¶¶ 55, 62-65.  After filing the inmate grievances, Plaintiff was transferred to another housing unit and reassigned to a new job within that unit.  Id., ¶¶ 87-93.

Plaintiff commenced this action by filing a Complaint in December 2015, ECF No. 1, and in August 2016, Plaintiff filed an Amended Complaint, ECF No. 43.  In the Amended Complaint, Plaintiff asserts that Defendants retaliated against him in violation of the First Amendment when they transferred Plaintiff

to a new housing unit and reassigned him to a new job after he filed an inmate grievance. ECF No. 43 at 1.

II. Standard of Review

In a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendant bears the burden of showing that no claim has been presented. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations. See Erickson v. Pardus, 551 U.S. 89, 94 (per curiam). The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."); Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a

3

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original and internal citations omitted). The court need not accept unsupported inferences, Cal. Pub. Employees Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), nor legal conclusions cast as factual allegations, Twombly, 550 U.S. at 556. Legal conclusions without factual support are not entitled to the assumption of truth. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A "claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The complaint that shows that the pleader is entitled to relief--or put another way, facially plausible--will survive a Rule 12(b)(6) motion. See Fed. R. Civ. P. 8(a)(2); Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).

III. Discussion

In their Motion to Dismiss, Defendants seek the dismissal of the claims against them based on the Supreme Court of the United States' decision in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017). See ECF No. 33. The Ziglar decision changed the landscape of civil rights remedies against federal employees. Whereas prior to Ziglar, courts construed the scope of cognizable suits brought pursuant to Bivens as coextensive with those brought pursuant to 42 U.S.C. § 1983, now district courts are directed first to analyze Bivens suits to determine whether the suit seeks to extend Bivens to "new contexts" and, if so, whether there are "special factors" that would counsel against extending Bivens liability to the new context.

In Ziglar, the Supreme Court explained that it has only recognized a Bivens remedy in three cases: (1) Bivens itself, which implied a damages action to compensate persons whose Fourth Amendment right to be free from unreasonable searches and

5

seizures was violated by federal officers; (2) Davis v. Passman, 442 U.S. 228 (1979), which recognized a right under the Due Process Clause of the Fifth Amendment for an administrative assistant to sue a member of congress for her firing because she was a women; and (3) Carlson v. Green, 446 U.S. 14 (1980), in which the Court held that the Eighth Amendment's Cruel and Unusual Punishment Clause provides a damages remedy for failure to provide adequate medical care. Ziglar, 137 S. Ct. at 1854. "These three cases--Bivens, Davis, and Carlson--represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Ziglar, 137 S. Ct. at 1855. As such, "expanding the Bivens remedy" beyond these contexts "is now a 'disfavored' judicial activity." Id.

Because expansion of Bivens is "disfavored," courts must use "caution before extending Bivens into any new context." Id. "A Bivens remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." Id. A context is "new"--and therefore requires a special factors analysis--if it is "different in a meaningful way from previous Bivens cases decided by this Court." Id. at 1859.

Plaintiff's claim for relief is a new context that would extend Bivens liability because the Supreme Court has never recognized a Bivens remedy for a violation of the First

6

Amendment.[1]  See Ziglar, 137 S. Ct. at 1855 (articulating the only three contexts in which Bivens liability has been recognized); Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012) (noting that the Supreme Court has "never held that Bivens extends to First Amendment claims").  This District as well as the Court of Appeals for the Third Circuit has previously recognized that a First Amendment claim is a "new context" under Ziglar.  See Vanderklok v. United States, 868 F.3d 189, 199-200 (3d Cir. 2017); Alexander v. Ortiz, No. 15-cv-6981, 2018 WL 1399302, at *4-5 (D.N.J. Mar. 20, 2018) (Simandle, J.).

Because Plaintiff's claim is a "new context," the Court must consider "'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'"  Vanderklok v. United States, 868 F.3d at 200 (quoting Wilkie v. Robbins, 551 U.S. 537, 550 (2007)).  "[I]f there is an alternative remedial structure present in a

---

[1] Plaintiff argues in his opposition brief that the Supreme Court of the United States has addressed retaliation claims in the context of Bivens in both Hartman v. Moore, 547 U.S. 250 (2006), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  See ECF No. 47 at 15-17.  See also Wood v. Moss, 134 S. Ct. 2056, 2067 (2014) ("[W]e have several times assumed without deciding that Bivens extends to First Amendment claims.  We do so again in this case.").  In light of the Supreme Court's explicit directive in the later-filed Ziglar case that it has only extended Bivens liability to certain claims arising under the Fourth, Fifth, and Eighth Amendments, the Court will not read Hartman, Ashcroft, and Wood as creating a Bivens remedy for retaliation claims.

certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Ziglar, 137 S. Ct. at 1858.

The Court concludes that no alternative process is available to Plaintiff, at least for his claim for damages in the Amended Complaint. Although Plaintiff could request prospective injunctive relief regarding his housing and job assignment and also file internal administrative grievances, such remedies would not provide him with the damages that he requests in his prayer for relief. See Alexander, 2018 WL 1399302, at *6. In addition, other federal statutory actions commonly utilized to redress workplace grievances would not be available to Plaintiff because he is not an "employee." See id. Plaintiff could also not seek relief under the Federal Tort Claims Act, under which constitutional violations are not redressable, or under the habeas statutes. See Alexander, 2018 WL 1399302, at *6 (citing F.D.I.C. v. Meyer, 510 U.S. 471, 477-78 (1994), as to the FTCA, and Preiser v. Rodriguez, 411 U.S. 475, 487-88 (1973), as to the habeas statutes). Thus, no alternative process exists or is available to Plaintiff for at least part of his requested relief. See Alexander, 2018 WL 1399302, at *6 (concluding no alternative process exists for federal prisoner seeking damages for alleged discrimination in the prison workplace).

The Court's final step of inquiry is whether "'any special factors counsel hesitation before authorizing a new kind of federal litigation.'" Wilkie v. Robbins, 551 U.S. 537, 550 (2007) (quoting Bush v. Lucas, 462 U.S. 367, 378 (1983)). This inquiry focuses on whether the courts are well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed. Ziglar, 137 S. Ct. at 1857-58. A "special factor counselling hesitation" is a factor that "cause[s] a court to hesitate before answering that question in the affirmative." Id. at 1858. "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts? The answer most often will be Congress." Id. at 1857 (quoting Bush, 462 U.S. at 380).

The Court finds that prison housing and the prison workplace are special factors precluding the extension of Bivens to Plaintiff's First Amendment claim. "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform . . . . Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Turner v. Safley, 482 U.S. 78, 84–85 (1987) (internal citations and quotation marks omitted).

"Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." Id. at 85. See also Ziglar, 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself . . . separation-of-powers principles are or should be central to the analysis.").

"[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant." Ziglar, 137 S. Ct. at 1862. Congress has not provided a legislative remedy for prisoners alleging constitutional deprivations against federal employees in the job or housing contexts,[2] despite providing one for prisoners as against state prison employees. See Civil Rights Act of 1871, Pub. L. No. 42-22, 17 Stat. 13 (codified in part at 42 U.S.C. § 1983). Congress's silence is especially persuasive because it has enacted legislation affecting federal prisoners many times, and in each instance, has declined to include a damages remedy for constitutional

---

[2] As Defendants argue in their opening brief, the Court notes that Plaintiff lacks a constitutional right to the placements he claims he was deprived of through retaliation, i.e. a certain housing and job assignment. See ECF No. 44-1 (citing Meachum v. Fano, 427 U.S. 215 (1976), and Olim v. Wakinekona, 461 U.S. 238 (1983), for the proposition that prisoners have no constitutional right to a housing assignment, and James v. Quinlan, 866 F.2d 627 (3d Cir. 1989), for the proposition that prisoners have no constitutional right to a job assignment).

10

violations against federal employees.  See, e.g., Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (codified in part at 28 U.S.C. § 2255); Prisoner Litigation Reform Act of 1995, Pub. L. No. 104-140, 110 Stat. 1321 (codified in part at 42 U.S.C. §§ 1997e); Crime Control Act of 1990, 104 Stat. 4789 (creating requirement that federal prisoners shall work); Act of May 27, 1930, Pub. L. No. 71-271, 46 Stat. 391 (establishing what is now known as UNICOR, which administers the federal prison workplace).

Notably, the federal prison workplace is an area in which Congress has extensively legislated.  Specifically, UNICOR is a program created by Congress to carry out the work requirement for federal prisoners, subject to security, disciplinary, medical, and rehabilitation exceptions.  See 18 U.S.C. §§ 4121-4129.  In fact, Congress has created a damages remedy for federal prisoners who are injured in the prison workplace.  See 18 U.S.C. § 4126(c)(4); 28 C.F.R. § 301.101(a)-(b).  A "[w]ork-related injury" is defined by the regulations as "any injury, including occupational disease or illness, proximately caused by the actual performance of the inmate's work assignment," and thus precludes constitutional violations.  28 C.F.R. § 301.102(a).  Had Congress intended to include a monetary remedy against federal officers or employees for constitutional claims within the federal prison workplace, i.e. UNICOR, it would have

11

so stated.  See Ziglar, 137 S. Ct. at 1856 ("When Congress enacts a statute, there are specific procedures and times for considering its terms and the proper means for its enforcement. It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action.").

Because the prison workplace and prison housing areas are already regulated by the legislative and executive branches, the Court finds that it should be left to those branches to determine whether an action for damages for claims of retaliation under the First Amendment exists.  Given the constraints of Ziglar, the Court will not extend Bivens and will grant the Motion to Dismiss.

IV. Conclusion

The Court will grant Defendants' Motion to Dismiss.  An appropriate order follows.


Dated: May 17, 2018                  s/ Noel L. Hillman
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.